## SHARPE v. COMMONWEALTH OF KENTUCKY.

### No. 9717.

Circuit Court of Appeals, Sixth Circuit.

April 24, 1944.

214

Robert M. Sharpe, of Lexington, Ky., for appellant.

No counsel appearing for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

This case has been before the state and federal courts on several occasions. Ex parte Sharpe, D.C., 36 F.Supp. 386; Sharpe v. Buchanan, 6 Cir., 121 F.2d 448; Sharpe v. Buchanan, 317 U.S. 238, 63 S.Ct. 245, 87 L.Ed. 238; Sharpe v. Commonwealth, 6 Cir., 135 F.2d 974; Sharpe v. Commonwealth, 284 Ky. 88, 143 S.W.2d 857; Sharpe v. Commonwealth, 292 Ky. 86, 165 S.W.2d 993.

Appellant now appeals from an order of the district court, denying his petition for a writ of habeas corpus. He was convicted of the crime of murder, by a jury in the Fayette Circuit Court, of Kentucky, on April 21, 1938, and was sentenced to life imprisonment. No appeal was taken and appellant has been confined to the state penitentiary since that time. He claims that the verdict and judgment were the result of perjured testimony; that an involuntary confession was secured from him by threats, mistreatment, and promises; and that one Patrick Stevens, had subsequently confessed to the murder, but has since repudiated such confession because of threats and intimidation.

Richard Mutran, the murdered man, was found in his oil station, in Lexington, Kentucky, on the night of December 12, 1937, his head having been battered in by blows from a heavy hammer. Appellant was an intimate friend of the murdered man, and admitted having been with him at his place of business on the night of the murder, shortly before it occurred. The police found that the last sales slip on Mutran's sales book was made out to appellant. They questioned him and, on several occasions, he stated that when he left the oil station, a Negro man and woman had just driven up in a car. He later admitted this was false and stated that no one was at the oil station when he left. Appellant informed the police that he had not known of Mutran's death until late on the night of the murder, when a friend called upon him and told him about it. The police were unable to secure any clues to the slayer. They do not appear to have thought that appellant committed the crime, but there seems to have been a lightly held suspicion that he might have known something about it and might be shielding the guilty person. However, this came to nothing, until more than two months after the murder, when, on February 16, 1938, appellant appeared at the police station in Chattanooga, Tennessee, and reported to the officers that he had been kidnapped by two men and had been driven all night from Lexington; and that the kidnappers had then let him out, told him to report the theft of his automobile to the police, and continued on with his car, which was found, shortly thereafter, on the outskirts of Chattanooga.

Appellant, some time after his report of the kidnapping, enlarged his story and told police that he had seen the two kidnappers at Mutran's place of business, on the night of the murder; that they had been with Mutran when appellant had left; and that about ten minutes after appellant drove away from the oil station, they drove up to his home, called him out, told him that Mutran had been killed, and warned him to say nothing to the police about having seen them at the oil station, under threat of being murdered, together with his family. Although he had never seen the men before the night of the murder, he had no explanation as to how they knew where he lived. He explained his delay in informing the police about the men for more than two months, because of his fear that he would be killed. He said that he had told his former story about the Negroes' being at the oil station when he left there, on the night of the murder, in order to shield the two actual murderers and, in turn, to protect himself from their vengeance. With regard to these murderers, he subsequently told the police that he had heard Mutran call one of these men Johnson, and that he had subsequently seen him and talked with him on several occasions—one of these times being at another oil station. The proprietor of the latter place, Tomlinson, remembered that appellant had talked with a man, Ed Johnson, whom he knew; and he advised the police where this man lived in Detroit.

Appellant accompanied the police to Detroit, where they found Ed Johnson, who remembered the talk with appellant at the Tomlinson oil station. However, appellant stated that Ed Johnson was not the man

who had kidnapped him and that he was not the Johnson with whom he had talked at Tomlinson's oil station, subsequent to the murder. Later, appellant told a friendly police officer that the whole kidnapping story was a lie, and that he had merely driven over to Chattanooga with two hitchhikers. From the evidence, this was an entirely voluntary statement on his part. The officer, however, testified that, at the same time that appellant told him the kidnapping story was false, he also told him that a man by the name of Ed Johnson had killed Mutran, in appellant's presence, over an argument about Johnson's running around with Mutran's wife, and that appellant disclosed the address of this new Johnson as University Place in Lexington. This man was a cousin of appellant, and a different Ed Johnson from the one in Detroit. When, after this accusation was allegedly made, Johnson was brought in and confronted appellant, appellant denied having made such a statement. Subsequently, appellant confessed that he had killed Mutran because of an insult to his wife. The statement he made was taken down and typewritten, and is approximately five pages long. Before signing it, appellant made changes in the phrasing in his own handwriting. He afterward repudiated the confession on the ground that he was coerced into making it, and, on his trial, insisted that the account of the kidnapping was true.

Appellant was not in custody until after his confession. The evidence is persuasive that he voluntarily accompanied the officers to the different cities to help identify the alleged kidnappers and the murderers, and returned to his home between these various trips. He came home alone from Detroit, having left without notifying the officer whom he had accompanied there. During his stay in Detroit, he had a hotel room to himself. He moved freely and alone about the lobbies and corridors of the hotels.

When, after sentence, appellant was confined to prison, he occupied a cell with one Patrick Stevens, alias Patrick Miller, a boy about 18 years old, who was serving a sentence for robbery. Stevens thereafter confessed to the murder of Mutran, but when he was brought before the grand jury, he repudiated his confession, testifying that appellant had promised him $5,000 if he would make the confession, and that he would also arrange to secure a pardon for Stevens. Stevens stated that he was so intent on getting out of the penitentiary that he thought the scheme might work, although he admitted that he must have been crazy to think so. He further denied that he had ever seen Mutran, or that he had ever been at his oil station. The charges against him were dismissed.

Although appellant now largely bases his right to a writ of habeas corpus on the Stevens confession, it is remarkable that such confession completely contradicts petitioner's story of the two unknown men who told him that Mutran had been murdered and who had kidnapped him and had threatened to kill him if he revealed the fact that he had seen them at Mutran's station.

The district court filed findings of fact and conclusions of law on the habeas corpus proceeding, and found that the claim that the verdict and judgment of the Fayette Circuit Court were the result of perjured testimony, was not sustained by the evidence; that the claim that the verdict was the result of an involuntary confession on the part of appellant was, likewise, not sustained by the evidence; that the alleged confession of Patrick Stevens was not true and that his later repudiation of the confession was voluntary and not induced by threat or intimidation; and that there was no competent, newly discovered evidence offered by the appellant, which would justify or sustain the granting of a new trial. The court concluded that the trial, conviction, and judgment in the Fayette Circuit Court, were in accordance with due process of law and were not in violation of any right provided for or granted to the petitioner by the Constitution of the United States. The petition for a writ of habeas corpus was, accordingly, denied.

After an examination of the record and exhibits, including affidavits of various persons filed in support of appellant's contentions, and upon consideration of his claim that his confession was the result of threats, mistreatment, intimidation, and promises, that the confession of Stevens was repudiated because of intimidation by police officers, and that evidence favorable to appellant was suppressed by police officers, it is our determination that the findings of fact of the district court were sustained by the evidence, and that there is no error in its conclusion of law.

The order of the district court, denying the petition for a writ of habeas corpus, is affirmed.